# United States Bankruptcy Court
# District of Massachusetts
# Western Division

_____
)
In re:                                             )
)                    Chapter 7
EARL F. DOOLEY,                        )                    Case No. 06-40948
)
Debtor.              )
)
_____ )
)
)
DAVID M. NICKLESS, Chapter 7  )
Trustee,                                          )
Plaintiff,              )
)                    Adversary Proceeding
v.                                                   )                    No. 07-04031
)
)
McGRAIL & McGRAIL, A.I.M.       )
MUTUAL INSURANCE CO., INC., )
E.H. MERRIFIELD BUS CO.,         )
INC.,                                              )
)
Defendants.        )
_____ )

### MEMORANDUM OF DECISION

Before this Court is the "Motion of David M. Nickless, Trustee, for Partial Summary Judgment" (the "Summary Judgment Motion") filed by the plaintiff David M. Nickless as the Chapter 7 trustee of Earl F. Dooley (respectively, "Trustee Nickless; the "Debtor"). The three primary issues before this Court for summary judgment determination are: (1)

1

whether, on the date of case commencement, the Debtor's third-party workers' compensation claim was property of the estate under 11 U.S.C. § 541(a); (2) whether the postpetition unauthorized settlement of the third-party claim was a violation of the automatic stay under 11 U.S.C. § 362(a) and therefore void under First Circuit precedent; and (3) whether monies retained by co-defendant McGrail and McGrail ("McGrail") for professional fees associated with a third-party settlement of that claim are subject to turnover under 11 U.S.C. § 542(a) and/or constituted a violation of Massachusetts General Laws ("M.G.L."), ch. 221, § 51 or M.G.L., ch. 93A §§ 2 and 11.

## I. FACTS AND TRAVEL OF THE CASE

On February 3, 2005, the Debtor was injured in a motor vehicle accident while in the course of his employment (the "Accident"). The other vehicle was owned and/or operated by E.H. Merrifield Bus Company ("Merrifield"). As a result of the Accident, the Debtor had common law third-party claims against Merrifield and rights under the Massachusetts workers' compensation statute, M.G.L., ch. 152. On June 30, 2005, the Debtor and McGrail entered into a contingent fee agreement whereby McGrail agreed to represent the Debtor in all claims arising from the Accident (the "Fee Agreement"). In return, the Fee Agreement provided for attorney compensation in the amount of one-third of any recovery, plus expenses.

On or about November 9, 2005, McGrail obtained approval from the Massachusetts Division of Industrial Accidents (the "DIA") for an award to the Debtor paid by the Debtor's employer's workers' compensation carrier, AIM Mutual Insurance ("AIM"). AIM, through weekly payments and an $11,000 lump sum, paid a total of $25,162.64 to the Debtor and

2

thereby asserted a lien (in the full amount of the payments) by operation of Massachusetts state law against any third-party claim/recovery by the Debtor. Also in 2005, McGrail began negotiations with Merrifield's insurer, National Interstate Insurance Company ("National Interstate"), regarding the Debtor's third-party claim and on January 9, 2006, filed an extensive demand package with National Interstate. Negotiations regarding the third-party claim continued throughout the spring of 2006 and resulted in a $40,000 offer from National Interstate.

The Debtor filed for relief under Chapter 7 of the Bankruptcy Code on June 7, 2006 (the "Petition Date"). Stephan Rodolakis was appointed Chapter 7 trustee ("Trustee Rodolakis") one day thereafter. On July 11, 2006, Debtor's bankruptcy counsel, Robert F. Casey, Jr. ("Attorney Casey"), requested information from McGrail regarding the third-party claim on behalf of Trustee Rodolakis - alerting McGrail for the first time to the existence of the Debtor's bankruptcy case.[1] In response, McGrail informed Attorney Casey that the third-party claim was still pending and National Interstate's $40,000 offer had not increased. No motion for leave to employ McGrail was filed with this Court. Instead, McGrail, at the Debtor's request, contacted AIM seeking to negotiate down the $25,162.54 lien against the third-party claim. As a result, in September 2006, McGrail reached an agreement with AIM

---

[1] One day prior, July 10, 2006, the § 341 meeting was held, at which the possibility of a third-party claim was disclosed to Trustee Rodolakis. Other than requesting information, there is nothing on the record to show that Trustee Rodolakis made any concerted attempt to gain control over the asset. Indeed, at the hearing on February 12, 2007 on his objection to the Debtor's attempt to exempt the claim, Trustee Rodolakis appeared curiously uninformed about the nature of the claim or its value, other than his confidence in "Jack McGrail," the individual who settled the case, postpetition and without court authority.

and National Interstate whereby National Interstate would pay $40,000 - split in equal amounts of $20,000 between AIM and the Debtor.

National Interstate, on its own accord, without signed settlement documents or settlement approval from the DIA, sent McGrail a check in the amount of $40,000 on or about September 28, 2006. One day earlier, McGrail received a letter from Attorney Casey acknowledging notice of the settlement proceeds to be disbursed to the Debtor in the amount of $13,333.33 and stating that, in his opinion, the amount was exempted.[2]

Subsequently, McGrail prepared a petition for third-party settlement approval for submission to the DIA (the "DIA Petition"). Within the DIA Petition, McGrail set forth the following planned disbursements of the settlement proceeds:

| | |
|---|---|
| Payment from settlement directly to the Debtor: | $13,333.33 |
| Payment from settlement directly to AIM: | $13,333.33 |
| Attorney fees to McGrail from AIM: | $6,666.67 |
| Attorney fees to McGrail from the Debtor: | $6,666.67.[3] |

---

[2] The Debtor's original Schedule C did not claim any exemption in the workers' compensation settlement and third-party claim. On August 11, 2006, the Debtor filed a motion to amend Schedules B and C to include the third-party claim, characterizing the failure to include it in the original schedules as a "misunderstanding." The Debtor's amended Schedule C listed the "Third-Party Claim and Workers Compensation Subrogation" as exempt under M.G.L., ch. 152, § 27 with an "Unlimited" exemption value and a current value of "UNKNOWN." The motion to amend was granted by the Court on August 25, 2006. But Trustee Rodolakis filed an objection to the merits of the "unlimited" exemption. That objection was sustained by the Court on February 12, 2007.

[3] The Court notes that in some of the pleadings filed with the Court, the amount of McGrail's attorney's fees from the settlement proceeds are referenced as $6,666.66, while in others they are referenced as $6,666.67. See, e.g., the Amended Complaint (stating the amount held by McGrail is $6,666.66) and the Joint Statement of Facts (referring to both $6,666.66 and $6,666.67 as the amount retained by McGrail). Although this difference of $.01 is nominal and does not impact the Court's overall decision, it is noted for sake of clarity. Throughout this Memorandum of Decision, the Court will refer to the amount held by McGrail as $6,666.67, as this is the amount provided in

On October 11, 2006, McGrail sent the DIA Petition and a third-party settlement letter to Attorney Casey and, on the following day, McGrail sent the DIA Petition to the Debtor for signature. Six (6) days later, on October 18, 2006, McGrail received two letters - one each from Attorney Casey and Trustee Rodolakis. Attorney Casey's letter acknowledged receipt of the proposed settlement documents and inquired as to McGrail's opinion regarding what portion of the settlement proceeds was attributable to future earnings. Trustee Rodolakis's letter instructed McGrail not to disburse any settlement proceeds to the Debtor. On December 13, 2006, McGrail received a copy of a letter from Attorney Casey to Trustee Rodolakis requesting that McGrail be allowed to pay $13,333.33 to AIM and $13,333.33 to McGrail for his fees, once the settlement was approved by the DIA.

McGrail received suggested changes to the DIA Petition from AIM's counsel on January 5, 2007 and a revised petition was filed with the DIA on February 2, 2007. McGrail informed Attorney Casey of DIA approval of the revised petition on February 6, 2007, sent the sum of $13,333.33 to AIM and inquired as to whether the settlement funds could now be released to the Debtor. On February 9, 2007, Attorney Casey requested information from McGrail to assist Attorney Casey in responding to Trustee Rodolakis's objection to the Debtor's exemption in the settlement proceeds. The objection was later sustained at a February 12, 2007 hearing. Also on February 12, 2007, presumably after the hearing, Trustee Rodolakis advised McGrail that he would need Bankruptcy Court approval of the settlement and demanded full turnover of the $40,000 settlement proceeds. McGrail responded to Trustee Rodolakis by explaining the history of the settlement and

---

the Joint Statement of Facts, para. 19, filed with the Court on May 30, 2008.

disbursement of the funds ($13,333.33 already paid to AIM; $6,666.67 paid to McGrail from AIM's portion of the settlement; $20,000 still held by McGrail in escrow for the Debtor). On February 14, 2007, Trustee Rodolakis revised his turnover demand to $26,666.67 (the $20,000 held in escrow plus the $6,666.67 paid to McGrail from AIM's settlement funds). McGrail responded the following day by stating he only had $20,000. Raising the stakes, on March 1, 2007, Trustee Rodolakis filed this adversary proceeding seeking turnover of the third-party claim settlement funds from McGrail ($26,666.67) and AIM ($13,333.33) (Counts I and II, respectively), and/or declaratory relief against all defendants in the form of a judgment declaring the third-party settlement void as a violation of the automatic stay under 11 U.S.C. § 362 (Count III).

On June 29, 2007, after the Pre-Trial Hearing, Trustee Rodolakis resigned as Chapter 7 trustee in the case. On or about July 3, 2007, Trustee Nickless was appointed as successor trustee.[4] Trustee Nickless made further demands for turnover in letters to McGrail dated July 30, 2007 and February 5, 2008. On February 14, 2008, Trustee Nickless sought to amend the Complaint by adding two additional counts under M.G.L., ch. 211, § 51 (Count IV) and M.G.L., ch. 93A, §§ 2 and 11 (Count V) (the "Amended Complaint"). This motion to amend was allowed without objection on March 4, 2008. Ten (10) days later, Trustee Nickless filed the Summary Judgment Motion on Counts I and III of the Amended Complaint.[5] Then, on March 26, 2008, Trustee Nickless filed a Motion to

---

[4] By order of this Court dated August 6, 2007, David M. Nickless was permitted to be substituted as the plaintiff in this action.

[5] At the time of filing the Summary Judgment Motion, the defendants' deadline for filing answers to the additional counts had not passed.

Compromise with defendant AIM in the Debtor's main case in order to dispose of Count II (the "AIM Compromise"). That motion was allowed by the Court on April 23, 2008 without objection.[6] AIM was then dismissed as a defendant in this proceeding.

Neither McGrail, nor the Debtor, nor Trustee Rodolakis, ever requested or received authorization from the Bankruptcy Court to employ McGrail as special counsel to Trustee Rodolakis with respect to the claims arising from the Accident.[7] Nor was any request for authority made to or received from the this Court to settle claims arising from the Accident.[8]

---

[6] Trustee Nickless and AIM agreed that AIM would pay $2,000 to the bankruptcy estate in full satisfaction of the bankruptcy estate's claim against the third-party claim settlement proceeds in AIM's possession. AIM also agreed to waive any lien it held against the rest of the settlement proceeds. Trustee Nickless agreed to waive any further claims against AIM from alleged automatic stay violations and from the retention of any proceeds from the Debtor's claims against Merrifield. As reason for why the compromise was in the best interest of the creditors and the bankruptcy estate, Trustee Nickless stated:

"(a) it simplifies the Bankruptcy Litigation by eliminating one of the three defendants, and (b) it effectively provides for payment of $11,333 in settlement of an asserted lien in the amount of $25,318.84 against the Debtor's claim against Merrifield."

[7] Section 327(a) and (e) of the Bankruptcy Code states, in relevant part,

"(a) ...the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.
. . .
(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed."

Bankruptcy Rule 2014(a) states in pertinent part,

"An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to §327 ... of the Code shall be made only on application of the trustee or committee."

[8] Bankruptcy Rule 9019(a) states that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

At Trustee Nickless's request, McGrail has turned over $20,000 of the settlement proceeds, but continues to hold $6,666.67.

At the hearing on the instant motion for partial summary judgment, the parties agreed to address Counts I, III and IV in the context of the Summary Judgment Motion.[9] The matter was then taken under advisement with a joint statement of facts and issues and additional briefing to be submitted by the parties.

## II.  POSITIONS OF THE PARTIES

Trustee Nickless maintains that the Debtor's third-party claim against Merrifield is property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1). Accordingly, he maintains that the proceeds from the unauthorized settlement of the cause of action are logically also estate funds, and should be turned over to him pursuant to 11 U.S.C. § 542(a). Relying upon In re Rothwell, 159 B.R. 274 (Bankr. D. Mass. 1993), Trustee Nickless contends that, because the Court never approved McGrail's employment as special counsel, McGrail should not be allowed any compensation from the settlement proceeds. Further relying upon this Court's language in In re Albert, 206 B.R. 636 (Bankr. D. Mass. 1997), distinguishing Rothwell from the facts of Albert, Trustee Nickless argues

---

[9] This Court's Proceeding Memorandum set forth:

"AS TO THE PLAINTIFF's MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS 1, 3 AND 4, THE PLAINTIFF AND DEFENDANT MCGRAIL & MCGRAIL ARE ORDERED TO FILE:
   1) ON OR BEFORE MAY 30, 2008, AN AGREED STATEMENT OF FACTS
      AND AGREED STATEMENT OF ISSUES; AND
   2) ON OR BEFORE JUNE 13, 2008, ANY MEMORANDA OF LAW WITH
      RESPECT THERETO.
AS TO THE PRE-TRIAL CONFERENCE ON COUNT 2, THAT PRE-TRIAL IS CONTINUED GENERALLY."

that because the third-party cause of action was settled without Bankruptcy Court approval, the agreement is unenforceable and because it is unenforceable, McGrail has no attorney's lien on the settlement proceeds - even the funds disbursed to AIM - as once a settlement is avoided, there are no proceeds to which a lien could attach. Trustee Nickless further maintains that once the Debtor filed for relief, McGrail's actual client became Trustee Rodolakis, but McGrail took no steps to be employed by Trustee Rodolakis. Accordingly, McGrail had no authority to settle the claim.

In addition, or alternatively, Trustee Nickless seeks declaratory relief in the form of a court ruling that the settlement itself was a violation of the automatic stay under 11 U.S.C. § 362 because McGrail and the Debtor failed to comply with Bankruptcy Rule 9019, and the act of settling the claim without Court authorization or approval was an act of control over estate property. As such, he contends, the settlement is void.

Trustee Nickless further maintains that McGrail's current dominion over the legal fees from the settlement proceeds is yet another violation of the automatic stay under 11 U.S.C. §362(a)(3)-(6). Arguing by analogy to situations where creditors aim to impose a constructive trust over estate property, Trustee Nickless contends that, regardless of whether McGrail's compensation derived from monies that were used to satisfy AIM's statutory lien, McGrail's refusal to turn over fees received from AIM is a violation of the automatic stay provisions which, inter alia, prohibit actions taken to create, perfect, or enforce liens or claims against estate property. Furthermore, Trustee Nickless asserts that McGrail's reliance upon the Massachusetts workers' compensation statute is misplaced - that the language of the statute does not allow an insurer's attorney to claim an interest in the recovery from a third-party. That right, he says, only inures to the insurer. And finally,

9

Trustee Nickless argues that McGrail has, in fact, waived its rights to any recovery from the settlement and should be estopped from litigating any rights to the settlement proceeds. The assertion of waiver and estoppel stem from the failure of McGrail to object to the AIM Compromise. Trustee Nickless contends that the AIM Compromise was the actual litigation of AIM's rights and AIM's right to the settlement proceeds - and did not include a provision for attorney's fees. Because McGrail did not object to the omission of an attorney fees component, Trustee Nickless says, McGrail's rights were waived and McGrail is now estopped from raising the issue in light of its disposition by a final order of this Court.

Simply, and not surprisingly, McGrail opposes Trustee Nickless's demand for turnover and request for declaratory judgment. McGrail does not dispute the fact that the settlement was finally and formally settled and executed postpetition, without authorization of its employment or approval of the settlement terms. Instead, McGrail defends its retention of the $6,666.67 from the settlement proceeds on the grounds that the funds retained by McGrail were not an asset of the bankruptcy estate. McGrail contends that most of the settlement work was completed prepetition and in addition to representing the Debtor, McGrail was essentially also working on behalf of the workers' compensation insurer who was statutorily entitled, under M.G.L., ch. 152, § 15, to reimbursement of its attorney's fees from the proceeds of the third-party claim causes of action.[10] McGrail

---

[10] M.G.L., ch. 152, § 15, states in relevant part:

Where the injury for which compensation is payable was caused under circumstances creating a legal liability in some person other than the insured to pay damages in respect thereof, the employee shall be entitled, without election, to the compensation and other benefits provided under this chapter. Either the employee or insurer may proceed to enforce the liability of such person, but the insurer may not do so unless compensation has been paid in accordance with sections ... or until seven months following the date of such injury. *The sum recovered shall be for the*

opines that because the proceeds held are from the distribution to the insurer and McGrail provided services to the insurer, they were never an asset of the bankruptcy estate, and are rightfully its compensation.

### III. DISCUSSION

#### A. The Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (applicable to adversary proceedings through Fed. R. Bankr. P. 7056). A "genuine" issue exists if "the evidence is such that a reasonable jury *could* resolve the point in favor of the nonmoving party." NASCO, Inc. v. Public Storage, Inc., 29 F.3d 28, 32 (1st Cir. 1994)(quoting Rodriguez-Pinto v. Tirado-Delgado, 982 F.2d 34, 38 (1st Cir. 1993)). A fact is "material" if it "carries with it the potential to affect the outcome of the suit under the applicable law." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)(citations omitted). "Essentially, the inquiry to determine whether there is a genuine issue as to a material fact is 'whether the evidence presents a sufficient

---

*benefit of the insurer, unless such sum is greater than that paid by it to the employee, in which event the excess shall be retained by or paid to the employee* ... "excess" shall mean the amount by which the gross sum received in payment for the injury exceeds the compensation paid under this chapter. The party which brings the actions or which pays the costs associated with the action, if the party bringing the action does not pay those costs, shall be entitled to retain those costs recovered in the action. Any interest received in such action shall be apportioned between the insurer and the employee in proportion to the amounts received by them respectively, exclusive of interests and costs. *The expenses of attorney's fees shall be divided between the insurer and the employee in proportion to the amounts received by them respectively*..." (emphasis added).

disagreement as to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 30 (1st Cir. 1990)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).

The moving party bears the burden of showing the absence of evidence to support the position of the nonmoving party. Mesnick v. Gen. Elec. Co., 950 F. 2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992). If the moving party properly supports its position, the burden then shifts to the nonmoving party to produce sufficient evidence to show a genuine issue for trial. Id. Parties opposing summary judgment must present "definite, competent evidence to rebut the motion." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)(quoting Mesnick, 950 F.2d at 822). Summary judgment will likely be appropriate if the nonmovant rests "upon some combination of 'conclusory allegations, improbable inferences, and unsupported speculation'." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). In determining summary judgment, the court must view the record in the light most favorable to the nonmoving party, indulging all reasonable inferences in the nonmovant's favor. Mesnick, 950 F.2d at 822.

For the purposes of ease in disposition, the Court shall address whether summary judgment is warranted in the following order: Counts III (declaratory judgment) and I (McGrail turnover), and lastly Count IV (McGrail state law violation for settlement proceed retention).

### B. Declaratory Judgment and Turnover

The best and least confusing approach to this messy fact pattern is to begin with first principles. When a person files a case under the Bankruptcy Code, "virtually all property

of the debtor at that time becomes property of the [debtor's] bankruptcy estate." In re Wood, 291 B.R 219, 224 (1st Cir. B.A.P. 2003). The bankruptcy estate includes, subject to limited exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "[T]he term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." In re Yonikus, 996 F.2d 866, 869 (7th Cir. 1993)(citing United States v. Whiting Pools, Inc., 462 U.S. 198, 204-5 (1983) and quoting Segal v. Rochelle, 382 U.S. 375, 379 (1966)). Within the scope of § 541(a) is "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative." Wood, 291 B.R. at 224 (quoting Yonikus, 996 F.2d at 869). Nor is the reach of § 541(a) restricted at the outset by the exemptions to which the debtor is entitled under the Bankruptcy Code. Property becomes estate property before it may be exempted and, by claiming an exemption in a claim listed as an asset in its schedules, a debtor "impliedly concedes that the claim is property of the estate, since a debtor cannot claim an exemption in property that is not property of the estate." Id., 291 B.R. at 225; see also Yonikus, 996 F.2d at 869 (stating that "[b]efore an exemption can be claimed, it must be estate property.").

The scope of § 541(a) includes claims that a Chapter 7 debtor may have against third parties. Accordingly, once a bankruptcy case is filed, a debtor may not dispose of such a claim until and unless exempted, with the time for objecting to the claim having expired, or until or unless the claim is duly abandoned by the Chapter 7 trustee. Rothwell, 159 B.R. at 377 (citations omitted). On the Petition Date, the Debtor's claim against Merrifield was still contingent and unliquidated - negotiations had been ongoing for some

time - and no settlement had been executed or finalized. That claim was therefore an asset of the bankruptcy estate.

Section 362(a)(3) of the Bankruptcy Code provides that the filing of a bankruptcy case "operates as a stay, applicable to all entities, of - ... any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The goal of the automatic stay is to "effect an immediate freeze of the status quo ... by precluding and nullifying most postpetition actions and proceedings ... affecting property in which the debtor, or the debtor's estate, has a legal, equitable or possessory interest." Interstate Commerce Comm'n v. Holmes Transp., Inc., 931 F.2d 984, 987 (1st Cir. 1991). In this Circuit, violations of the automatic stay are void. In re Soares, 107 F.3d 969, 976 (1st Cir. 1997). In fact, actions in violation of the automatic stay are void ab initio and of no effect, regardless of an offender's lack of knowledge of the case filing. In re Advent Corp., 24 B.R. 612, 614 (B.A.P. 1st Cir. 1982)(citations omitted). Once the automatic stay is in operation, if a party in interest seeks "to enforce a claim or lien against property of the estate, it must obtain relief from the stay from the Bankruptcy Court." Fleet National Bank v. Gray, 2003 WL 1700978, No. 02-40101, at 6 (D. Mass. Mar. 28, 2003)(citations omitted).

Trustee Nickless here takes the position that settlement of a claim for relief which constituted property of the estate - by an attorney not authorized to do so and without court approval of the settlement - was an act to obtain possession or exercise control over property of the estate. This Court can not quarrel with that statement. McGrail completed negotiations for and finalized a settlement regarding an asset of the bankruptcy estate. It had no authority to do so.

Bankruptcy Rule 9019 provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The majority of courts have interpreted Bankruptcy Rule 9019(a) to "requir[e] court approval for *all* compromises and settlements." In re Fleming Packaging Corp., 2008 WL 682428, No. 04-8166, at 2 (Bankr. C.D.Ill. Mar. 7, 2008)(citing In re Seminole Walls & Ceilings Corp., 366 B.R. 206 (Bankr. M.D.Fla. 2007); In re Nationwide Sports Distributors, Inc., 227 B.R. 455 (Bankr. E.D.Pa. 1998); In re Cincinnati Microwave, Inc., 210 B.R. 130 (Bankr. S.D.Ohio 1997); In re Leslie Fay Cos., Inc., 168 B.R. 294 (Bankr. S.D.N.Y. 1994); Rothwell, 159 B.R. at 374; and In re OptInRealBig.com, Inc., 345 B.R. 277 (Bankr. D.Colo. 2006))(emphasis added). As the court in Flemming stated,

> Because the [trustee] must obtain prior Court approval before compromising the interests of the bankruptcy estate, every settlement agreement entered into by a trustee contains an implied condition that its enforceability is subject to court approval. That condition may not be waived by the trustee. A tentative compromise which is not approved is of no legal effect. All terms of the compromise are nullified.

Id. at 3. The purpose of Bankruptcy Rule 9019 is to ensure that creditors be given notice of the settlement and provided with the opportunity to object and the court must be able to independently review the settlement to ensure that it is in the estate's best interest. In re Fortran Printing, Inc., 297 B.R. 89, 96 (Bankr. N.D.Ohio 2003). Because no steps were taken to seek court approval of the settlement with National Interstate, these necessary protections were not made available. Nor was McGrail's employment authorized by this Court pursuant to § 327(a) or (e) of the Bankruptcy Code and Bankruptcy Rule 2014.

Of course, McGrail was not alone in contributing to this difficult situation. Trustee Rodolakis's response to being advised as to the possibility of a claim available to the estate

15

appears to have been slow and lacking in vitality.[11] And if he really understood that McGrail was continuing to prosecute the claim, his failure to corral McGrail was inexplicable. Attorney Casey contributed first by failing to identify, schedule, and seek to exempt the third-party claim and then by opining to McGrail that it was free to settle and make disbursements therefrom because the claim was exempt.  And McGrail, regardless of its good faith, can not avoid being charged with the greatest portion of blame.  Knowing that its original client was now a Chapter 7 debtor, it plowed ahead, prosecuting the claim, arranging for its settlement and actually making disbursements - while relying on the advice of counsel to a client in bankruptcy and not seeking express permission from the Chapter 7 trustee and court approval of its employment in the client's bankruptcy case.  Lawyers who engage in personal injury work ought to have a better background in an area of law which leaves them so exposed to criticism and liability.

In short, there were a series of mistakes and by multiple parties.  But they have been easier to name than to identify the appropriate remedy.  As for the settlement with Merrifield/National Interstate, it is plainly void.  It was unauthorized, both because the Court

---

[11] Why Trustee Rodolakis took no steps to employ McGrail or some other professional or took any other steps to pursue the third-party claim is unknown.  Indeed, Trustee Rodolakis failed to make any formal demands for turnover until instructed to do by this Court after his objection to the Debtor's exemption was sustained at the February 12, 2007 hearing.  However, there is also no support for the suggestion that Trustee Rodolakis specifically acquiesced to the settlement and impliedly approved it during the fall of 2006.  And even if McGrail had represented that Trustee Rodolakis acquiesced to the settlement terms,

> [P]urported acquiescence on the part of the trustee to either the Debtor's prosecution of a case or his counsel's representation and settlement of a case is insufficient justification for action without bankruptcy court approval where the cause of action has not been abandoned by the trustee.

Rothwell, 159 B.R. at 378.

16

never approved it, and because it was reached by an attorney for a party who no longer owned the claim. However, some portion of the proceeds of the purported settlement have been disbursed to AIM, and, at the request of Trustee Nickless, this Court has already approved *his* settlement with AIM. Accordingly, although the settlement is void, Merrifield and its insurer, National Interstate, will be entitled to a credit in the amount of $13,333.33 against any monies which Trustee Nickless may recover against them. Trustee Nickless will be ordered to return to National Interstate the sum of $20,000 which he obtained from McGrail. And McGrail will be ordered to remit the sum of $6,666.67 to Trustee Nickless who will, upon receipt, return those funds to National Interstate. McGrail's argument that it earned those funds from AIM and not the bankruptcy estate is without merit. Although AIM may have been entitled to a reimbursement of its attorney's fees, McGrail was a stranger to AIM but for his purported status representing the Debtor. McGrail's entitlement to the fees was derivative of his representation of the holder of the claim against Merrifield. But, as McGrail was not authorized to represent the holder of the claim, it is not entitled to the fees. Furthermore, Merrifield would likely seek a credit from Trustee Nickless for those monies against any claim that Trustee Nickless might ultimately recover against Merrifield.

Because the settlement of the third-party claim is void ab initio and without effect as a violation of the automatic stay, there exists no valid settlement. Count III is, accordingly, resolved in accordance with the foregoing in favor of Trustee Nickless.

Count I of Amended Complaint seeks turnover pursuant to § 542(a) of the Bankruptcy Code of the fees currently held by McGrail relating to the third-party claim

settlement.[12] It is also resolved in favor of Trustee Nickless, but, as the Court has, at his request, ruled the settlement void, Trustee Nickless is but a conduit to return those monies to National Interstate.

**C.     Violations under M.G.L., ch. 221, § 51 and M.G.L., ch. 93A, §§ 2 and 11**

The Amended Complaint added two counts (Counts IV and V) to the adversary proceeding. In each, Trustee Nickless alleges violations of Massachusetts state law relating to McGrail's retention of settlement proceeds. Specifically, in Count IV, Trustee Nickless alleges that McGrail violated M.G.L., ch. 221, § 51 for failing to turnover the proceeds from the third-party claim settlement to the Trustee Nickless, after being requested to do so. M.G.L., ch. 221, § 51 states in whole,

> An attorney at law who unreasonably neglects to pay over money collected by him for and in behalf of a client, when demanded by the client, shall forfeit to such client five times the lawful interest of the money from the time of the demand.

Related to Count IV, Count V sought a determination that the actions described in Count IV were done "willfully and/or knowingly" and constitute "unfair and deceptive trade practices" under M.G.L., ch. 93A §§ 2 and 11. See Amended Complaint, para. 39.

---

[12] Section 542(a) of the Bankruptcy Code states:

"Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the Trustee Nickless may use, sell, or lease under section 363 of this title, or that the debtor may have exempt under section 522 of this title, shall deliver to the Trustee Nickless, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."

18

This Court's determination that the third-party claim settlement was void and of no effect moots the remaining state-law based counts (Counts IV and V). There was no settlement, and, as Trustee Nickless has ably demonstrated, the bankruptcy estate was never McGrail's client. Accordingly, those counts should be dismissed.

**IV.   CONCLUSION**

For the aforementioned reasons, this Court will:

1. GRANT Trustee Nickless summary judgment on Counts I and III of the Amended Complaint, this Court holding that the third-party claim was property of the bankruptcy estate and the settlement of said asset was in violation of the automatic stay under 11 U.S.C. § 362(a)(3);

2. ORDER a disposition of the purported settlement proceeds as set forth herein in order to return the parties, so far as the Court is able, to the *status quo ante*; and

3. DISMISS Counts IV and V as moot.

A Judgment in conformance with this Memorandum of Decision shall issue in conjunction herewith.

By the Court,

*[signature: Henry Jack Boroff]*

Dated: January 13, 2009

Henry J. Boroff
United States Bankruptcy Judge